

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>D-1 CHARLES WASSON, M.D.,<br>D-2 MAURICE POTTS, M.D.,<br>D-3 BRUCE KAPLAN, M.D.,<br>D-4 SHARELENE DAWSON,<br>　　　a/k/a SHARELENE CRAWFORD,<br>D-5 DESIREE KING,<br>D-6 LANISE GORTMAN,<br>D-7 AARON ALONZO THOMAS,<br>D-8 VALECIA VERNETTE-MICHEL LOGAN, and<br>D-9 ANTOINE ARNOLD,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　/ | Case: 2:24-cr-20520<br>Assigned To : Lawson, David M.<br>Referral Judge: Stafford, Elizabeth A.<br>Assign. Date : 9/19/2024<br>Description: IND USA V SEALED MATTER (SH)<br><br>Violation:　21 U.S.C. § 841(a)(1),<br>　　　　　　 21 U.S.C. § 846 |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### GENERAL ALLEGATIONS

At all times relevant to the Indictment:

1. P&A Aftercare LLC (P&A Aftercare), a purported medical clinic, was organized and operated first in Detroit, Michigan, and later in Southfield, Michigan.

2. The owner and operator of P&A Aftercare was SHARELENE DAWSON a/k/a SHARELENE CRAWFORD.

1

3. Drs. CHARLES WASSON, MAURICE POTTS, and BRUCE KAPLAN were licensed medical doctors in the State of Michigan and were authorized by the Drug Enforcement Administration (DEA) to prescribe Schedule II – V controlled substances by issuing prescriptions, provided that such prescriptions were issued in the usual course of their professional medical practice.

4. DESIREE KING was the manager at P&A Aftercare, and it was her role to run the day-to-day operations of the clinic, which purported to provide health services to patients.

## COUNT ONE

(21 U.S.C. §§ 841(a)(1), 846 – Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances)

D-1 CHARLES WASSON, M.D.,
D-2 MAURICE POTTS, M.D.,
D-3 BRUCE KAPLAN, M.D.,
D-4 SHARELENE DAWSON,
    a/k/a SHARELENE CRAWFORD,
D-5 DESIREE KING,
D-6 LANISE GORTMAN,
D-7 AARON ALONZO THOMAS,
D-8 VALECIA VERNETTE-MICHEL LOGAN, and
D-9 ANTOINE ARNOLD

5. The general allegations contained in paragraphs 1 through 4 are incorporated into this Count.

6. Beginning in or about June 2021, and continuing up to and including September 2024, in the Eastern District of Michigan, Southern Division, the

defendants CHARLES WASSON, M.D., MAURICE POTTS, M.D., BRUCE KAPLAN, M.D., SHARELENE DAWSON a/k/a SHARELENE CRAWFORD, DESIREE KING, LANISE GORTMAN, AARON ALONZO THOMAS, VALECIA VERNETTE-MICHEL LOGAN, and ANTOINE ARNOLD did knowingly, intentionally and unlawfully conspire and agree with each other to possess with intent to distribute and to distribute controlled substances, including but not limited to the Schedule II drug Oxycodone, the Schedule II drug Oxycodone-Acetaminophen (Percocet), and the Schedule II drug Hydrocodone-Acetaminophen (Norco). The prescription controlled substances were distributed outside the usual course of professional practice and for no legitimate medical purpose, all in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

**Object and Purpose of the Conspiracy**

7. The purpose of the conspiracy was for the physicians at P&A Aftercare to issue prescriptions for controlled substances that were not for the legitimate treatment of patients, paid for in cash or via peer-to-peer money transfer applications, that once filled at pharmacies were diverted to sales on the illegal market.

**Manner and Means of the Conspiracy**

8. Beginning in or about June 2021, and continuing up to and including September 2024, in the Eastern District of Michigan, the defendants engaged in a

3

scheme to unlawfully distribute prescription drug controlled substances in exchange for money. The defendants joined and participated in this conspiracy at different times, played different roles, and engaged in different aspects of the overall conspiracy.

9. As part of the conspiracy, SHARELENE DAWSON employed physicians and others for the purpose of unlawfully distributing controlled substance prescriptions.

10. As part of the conspiracy, Drs. WASSON, POTTS, and KAPLAN worked at P&A Aftercare and knowingly and intentionally prescribed controlled substances outside the usual course of their professional practice and for no legitimate medical purpose, in furtherance of the scheme. Drs. WASSON, POTTS, and KAPLAN issued the prescriptions after a cursory examination, after a few questions but without a physical examination, or without any visit taking place between the physician and purported patient.

11. The opioid prescriptions issued by the physicians working at P&A Aftercare were not issued for the legitimate treatment of patients, but rather to unlawfully distribute controlled substance prescriptions. The illegally prescribed and distributed controlled substances included Oxycodone, Oxycodone-Acetaminophen (Percocet), and Hydrocodone-Acetaminophen (Norco). These drugs are in high demand on the illegal market. The approximate value, on the illegal market, of the prescriptions

distributed was approximately $28 million.

12. As part of the conspiracy, DESIREE KING communicated with patient recruiters and purported patients to take requests for prescriptions of controlled substances and transmit those requests to the doctors. Further, it was the role of DESIREE KING and others to collect cash payments or payments via peer-to-peer money transfer applications for issuance of the controlled substance prescriptions.

13. As part of the conspiracy, it was the role of LANISE GORTMAN, AARON ALONZO THOMAS, VALECIA VERNETTE-MICHEL LOGAN, and ANTOINE ARNOLD to serve as patient recruiters or marketers, who recruited and maintained a cadre of fake "patients" who received prescriptions from the doctors at P&A Aftercare. GORTMAN, THOMAS, LOGAN, and ARNOLD worked to get the prescriptions filled and kept the controlled substances to sell on the illegal market.

14. As part of the conspiracy, recruited "patients" were seen by Drs. WASSON, POTTS, and KAPLAN, if they were seen at all. SHARELENE DAWSON and DESIREE KING required all "patients" or their recruiters to pay cash or money via peer-to-peer money transfer applications for the prescriptions, and they charged different amounts of money depending on the quantity, type, and dosage of the prescription opioid that the patient recruiter/marketer requested and received. After a cursory examination, or a few questions but without a physical examination—or without any visit taking place between the medical professional and purported

patient—Drs. WASSON, POTTS, or KAPLAN issued prescriptions for controlled substances, outside the usual course of their professional practice and for no legitimate medical purpose, to the "patients" recruited by LANISE GORTMAN, AARON ALONZO THOMAS, VALECIA VERNETTE-MICHEL LOGAN, ANTOINE ARNOLD, and others.

15. As part of the conspiracy, Drs. WASSON, POTTS, and KAPLAN requested documentation such as MRI reports from patients, to give the appearance of legitimacy, but repeatedly prescribed controlled substances without receiving MRI reports. At times, DESIREE KING and others created and facilitated fraudulent urine drug screen reports and purported Michigan Automated Prescription System ("MAPS") reports, to give the appearance of legitimacy, and they charged patient recruiters/marketers additional amounts of money for the fraudulent records.

16. As part of the conspiracy, Drs. WASSON, POTTS, and KAPLAN authorized electronic prescriptions for Schedule II controlled substances, which were issued under their DEA licenses. Drs. WASSON, POTTS, and KAPLAN also issued non-controlled maintenance medication prescriptions. The "maintenance" medications were prescribed to make the physicians' prescribing practices appear more legitimate, for example, by reducing their percentage of controlled substance prescriptions in comparison to non-controlled substance prescriptions. Most of the unlawful controlled substance prescriptions were paid for in cash. However, in

addition, both controlled and non-controlled "maintenance" medication prescriptions were billed by pharmacies to health care benefit programs, to include Medicare and Medicaid.

## FORFEITURE ALLEGATIONS

(21 U.S.C. § 853 – Criminal Forfeiture)

17. The allegations set forth above in this Indictment are hereby incorporated by reference as if they were set forth in full herein for the purpose of alleging forfeiture against each defendant pursuant to 21 U.S.C. § 853.

18. Pursuant to Title 21, United States Code, Section 853(a), upon conviction of the controlled substance offense in violation of Title 21, as alleged in Count One of this Indictment, the convicted defendant(s) shall forfeit to the United States: (a) any property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of such violation; and (b) any property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation.

19. <u>Money Judgment</u>: As part of the forfeiture in this case, the government intends to seek a forfeiture money judgment against the charged defendants. Upon conviction of violating Title 21, United States Code, Sections 841(a)(1), 846, defendants shall be ordered to pay the United States a sum of money equal to the total amount of property subject to forfeiture, including proceeds defendants

obtained as a result of such violation and property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation.

20. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek to forfeit any property of the defendants up to the value of the forfeitable property described

above.

                                              THIS IS A TRUE BILL

                                              s/GRAND JURY FOREPERSON

DAWN N. ISON
United States Attorney

s/MARK CHASTEEN
Chief, White Collar Crime Unit
Assistant United States Attorney

s/LISANDRA FERNANDEZ-SILBER
Assistant United States Attorney
211 W. Fort Street, Ste. 2001
Detroit, Michigan 48226
(313) 226-9122
lisandra.fernandez-silber@usdoj.gov

s/REGINA R. MCCULLOUGH
Assistant United States Attorney
211 W. Fort Street, Ste. 2001
Detroit, Michigan 48226
(313) 226-9618
regina.mccullough@usdoj.gov

Dated: September 19, 2024

**ORIGINAL**

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover ! | Case: 2:24-cr-20520<br>Assigned To : Lawson, David M.<br>Referral Judge: Stafford, Elizabeth A.<br>Assign. Date : 9/19/2024<br>Description: IND USA V SEALED MATTER (SH) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete i

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)¹: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials:    *LFS* |

Case Title: USA v. CHARLES WASSON, et al.

County where offense occurred : Oakland

Check One:    ☒ Felony    ☐ Misdemeanor    ☐ Petty

✓ Indictment/____ Information --- no prior complaint.
____ Indictment/____ Information --- based upon prior complaint [Case number:                    ]
____ Indictment/____ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

Superseding to Case No: _____    Judge: _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

September 19, 2024
Date

*[signature]*
Lisandra Fernandez-Silber
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313-226-9122
E-Mail address: lisandra.fernandez-silber@usdoj.gov

---

¹ Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.